UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUPONCABIN, INC., | |
| Plaintiff, | No. 18 C 7525 |
| v. | Judge Thomas M. Durkin |
| PRICETRACE, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

CouponCabin, Inc. alleges that PriceTrace, LLC illegally took coupon codes available on CouponCabin's website and provided the codes on PriceTrace's website. CouponCabin claims that this activity violates: (1) the federal Computer Fraud and Abuse Act (Count I); and (2) the Illinois Trade Secrets Act (Count II); and constitutes (3) tortious interference with economic advantage (Count III); and (4) breach of contract (Count IV). PriceTrace has moved to dismiss the claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 14. That motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

CouponCabin receives commissions from internet retailers for providing the retailers' coupon codes on the CouponCabin website and directing customers to the retail websites. CouponCabin alleges that PriceTrace accesses CouponCabin's website, takes the coupon codes, and provides them on PriceTrace's website. After discovering PriceTrace's activities, CouponCabin sent PriceTrace a letter demanding that PriceTrice stop accessing and taking data from CouponCabin's website and remove from PriceTrace's website all coupon codes taken from CouponCabin's

website. *See* R. 1-1 at 5. CouponCabin alleges that PriceTrace has continued to access and take data from CouponCabin's website even after the letter was sent.

## Analysis

### I. Agency

As an initial matter, PriceTrace argues that CouponCabin has "failed to allege facts showing how any of the persons mentioned in the Complaint are 'agents' of [PriceTrace]." R. 20 at 1. But CouponCabin alleges that the unauthorized access was committed through a website called dealmoon.com and that PriceTrace owns dealmoon.com. At the pleading stage, "a generalized factual predicate that supports the inference of agency will suffice." *Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, 2018 WL 1394032, at *4 (N.D. Ill. Mar. 20, 2018); *see also Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) ("'Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to an inference of agency relationship through the use of generalized as opposed to evidentiary facts.'" (quoting *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016))). The allegation that PriceTrace owns dealmoon.com is sufficient to plausibly allege that dealmoon.com is PriceTrace's agent.

### II. Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act prohibits a person from "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, [to] thereby obtain[] . . . information from any protected computer." 18 U.S.C. §

1030(a)(2)(C). A "protected computer" is any computer "used in or affecting interstate or foreign commerce or communication." *Id.* § (e)(2)(B). A plaintiff may bring an action for violation of the Act if the plaintiff "suffers damage or loss by reason of a violation." *Id.* § (g). "Damage" means "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § (e)(8). "Loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § (e)(11). The alleged "loss" during any one-year period must be "at least $5,000 in value." *Id.* § (g) (referring to § (c)(4)(A)(i)(I)).

CouponCabin alleges that it revoked PriceTrace's access to the CouponCabin website, and that PriceTrice continued to access the website without authorization. This is sufficient to plausibly allege violation of § 1030(a)(2)(C), which prohibits mere unauthorized access.

The question is whether CouponCabin has alleged damage or loss, such that CouponCabin has a right to bring an action under the Act. CouponCabin argues that it has alleged damage because its website's data was "impaired" when PriceTrace "breached . . . remedial measures," thereby "compromis[ing] . . . the security and operation of the Website." R. 19 at 5. But the argument that CouponCabin's website's operation was compromised is not supported by CouponCabin's allegations. Nowhere in the complaint does CouponCabin allege that PriceTrace's activities impacted the

4

operation of CouponCabin's website in any way. Rather, CouponCabin is simply alleging that PriceTrace was able to circumvent CouponCabin's website security, with no allegation that such evasion impairs or harm the website. Absent allegation of impairment, CouponCabin has merely alleged that PriceTrace accessed CouponCabin's website without authorization. "The case law is abundantly clear that the mere accessing of data does not meet the definition of damage under the [statute]." *Pascal Pour Elle, Ltd. v. Jin*, 75 F. Supp. 3d 782, 791 (N.D. Ill. 2014) (citing *Farmers Ins. Exchange v. The Auto Club Group*, 823 F. Supp. 2d 847, 852-53 (N.D. Ill. 2011); *Mintel Int'l Group, Ltd. v. Neergheen*, 2010 WL 145786, at *9 (N.D. Ill. Jan. 12, 2010)). CouponCabin has not identified "any impairment to the integrity or availability of data, a program, a system, or information" to plausibly allege "damage" under the Act.

"Loss," however, does not necessarily require "damage." Although "loss" can be the cost of repairing "damage," "loss" is generally defined as "any reasonable cost to any victim, including the cost of responding to an offense . . . and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." In one sentence, CouponCabin argues that "the costs and expenses associated with revoking access and then implementing new security was a 'loss'." R. 19 at 5. But CouponCabin makes no allegations or argument about what actions it took in response to PriceTrace's unauthorized access, or whether the costs of those actions exceeded $5,000. It is certainly possible that CouponCabin expended significant cost in attempting to block PriceTrace's access. But it is equally if not more

5

likely that blocking unauthorized users is a regular operation for CouponCabin and that PriceTrace's access did not materially increase CouponCabin's costs of doing business. The mere *possibility* that PriceTrace's access imposed costs on CouponCabin is not enough to state a claim under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Rather, CouponCabin's allegations "must establish a nonnegligible probability that the claim is valid." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010).

The Court can plausibly infer from CouponCabin's allegations that it will lose commissions because its coupon codes are also available on PriceTrace's website. But the Act's definition of "loss" limits relevant consequential damages to those "incurred because of interruption of service." As discussed with respect to the definition of "damage," CouponCabin has not alleged that the service of its website was interrupted or impaired in any other way. Thus, CouponCabin has failed to make a plausible showing that it suffered "loss," so its claim for violation of the Computer Fraud and Abuse Act is dismissed.

### III. Trade Secrets

Under Illinois law, a "trade secret" means "information" that: "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use;" and "(2) is the subject of efforts that are reasonable under the circumstances to maintain its

secrecy or confidentiality." 765 ILCS 1065/2(d). CouponCabin argues that "[t]he specific coupon codes [it] obtains from its merchants are exclusively for [CouponCabin's] use under contract." R. 19 at 5. But CouponCabin alleges in its complaint that it makes the coupon codes available to the public on its website. *See* R. 1 ¶ 5. CouponCabin does not even allege or argue that a subscription or user fee is necessary to access the coupon codes. *See* R. 19 at 5 ("The website itself [is] generally accessible[.]"). CouponCabin argues in its brief that the "codes appearing on a competitor's website can only be obtained by that competitor through improper activities." R. 19 at 5. But this argument does not reference any allegation in the complaint, and appears to contradict CouponCabin's allegation that the coupon codes are available to the general public. Maybe the coupon codes are imbedded in CouponCabin's website, such that the codes themselves are not actually available to the public viewing the website. Such an allegation might be sufficient to plausibly allege a trade secret. But that kind of allegation is not in the complaint. Thus, CouponCabin has not plausibly alleged that the coupon codes are "secret." For this reason, its claim under the Illinois Trade Secrets Act is dismissed.

IV. **Tortious Interference**

The elements of a tortious interference claim under Illinois law are: "(1) plaintiff's reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; (3) defendant's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to plaintiff resulting from defendant's conduct." *F:A J*

7

*Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007). "A reasonable expectancy of future business requires more than the hope or opportunity of a future business relationship." *Frain Grp., Inc. v. Steve's Frozen Chillers*, 2015 WL 1186131, at *4 (N.D. Ill. Mar. 10, 2015) (citing *Huon v. Breaking Media, LLC*, 2014 WL 6845866, at *16 (N.D. Ill. Dec. 4, 2014); *Quantum Foods, LLC v. Progressive Foods, Inc.*, 2012 WL 5520411, at *3 (N.D. Ill. Nov. 14, 2012); *Business Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007)).

PriceTrace argues that CouponCabin has failed to plausibly allege a "reasonable expectancy" because it fails to "name any specific business prospect or even a class of prospects." R. 15 at 9. PriceTrace also argues that CouponCabin fails to establish the third element of a tortious interference claim because CouponCabin "does not give the Court any clue as to PriceTrace's intent." *Id.* But CouponCabin has alleged that it provides 20,000 coupons for more than 3,000 retailers. *See* R. 1 ¶ 5. This plausibly alleges that CouponCabin's business is viable and indicates more than a mere hope of continued business.

CouponCabin's complaint also plausibly establishes that the foundation of its business is providing access to certain coupon discounts. CouponCabin alleges that PriceTrace takes this information and makes it available on its website, decreasing the chance that customers will visit CouponCabin to find coupons. This plausibly establishes that PriceTrace understands the value of the coupons and hopes to induce customers to visit its website by offering the coupons there. CouponCabin also alleges that its revenue comes from commissions paid by the retailers. If the coupons are also

available on PriceTrace's website, it is plausible that decreased traffic to CouponCabin's website as a result of the coupons being available on PriceTrace's website will cause CouponCabin to earn less in commissions. Therefore, the Court finds that CouponCabin has sufficiently alleged a tortious interference claim.

V.     **Breach of Contract**

The terms and conditions for use of CouponCabin's website prohibit "harvesting" (among other verbs) the information on the website. CouponCabin alleges that PriceTrace's conduct violated these conditions.

The terms and conditions provide that they are enforceable against anyone who uses the website—a provision known as "browsewrap" agreements. *See Alan Ross Mach. Corp. v. Machinio Corp.*, 2018 WL 3344364, at *5 (N.D. Ill. July 9, 2018). "Courts enforce browsewrap agreements only when there is actual or constructive knowledge of terms." *Id.*; *see also TopstepTrader, LLC v. OneUp Trader, LLC*, 2018 WL 1859040, at *3 (N.D. Ill. Apr. 18, 2018); *Sgouros v. TransUnion Corp.*, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015), *aff'd,* 817 F.3d 1029 (7th Cir. 2016). "When there is no evidence that users had actual knowledge of the terms at issue, the validity of a browsewrap contract hinges on whether a website provided reasonable notice of the terms of the contract, *i.e.*, whether users could have completed their purchases without ever having notice that their purchases are bound by the terms." *Alan Ross*, 2018 WL 3344364, at *5.

PriceTrace argues that it did not know about the terms and conditions because they are posted at the bottom of the website at the end of the long list of coupon codes,

and CouponCabin has not alleged the PriceTrace ever made it to the end of the list. *See* R. 15 at 12-13. Whether PriceTrice viewed the terms and conditions on the website is a question of fact and not a basis to dismiss the claim. But in any event, CouponCabin sent PriceTrace a cease and desist letter highlighting the terms of use, and PriceTrace is alleged to have continued to violate the terms even after receiving the letter. This plausibly alleges knowledge sufficient to support a breach of contract claim.

**Conclusion**

Therefore, PriceTrace's motion to dismiss [14] is granted to the extent that Counts I and II are dismissed without prejudice. PriceTrace's motion is denied with respect to Counts III and IV.

If CouponCabin believes it can cure the deficiencies with Counts I and II described in this opinion, it may file a motion for leave to file an amended complaint by May 10, 2019. The motion should be supported by a brief of no more than five pages and a proposed amended complaint compared against the current complaint. PriceTrace should not reply to the motion unless the Court so orders. CouponCabin should be prepared to inform the Court at the status hearing set for April 17, 2019, whether it intends to file such a motion.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 11, 2019